IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

SHAWN ISAKSON,

                Plaintiff,

      vs.

ROBERTS MARKEL WEINBERG
BUTLER HAILEY PC,

                Defendant.

CV 23–139–M–DWM

OPINION
and ORDER

       This case arises out of Shawn Isakson's employment with, and subsequent termination from, the law firm Roberts Markel Weinberg Butler Hailey PC (the "Firm"). (*See* Doc. 1.)  The Firm seeks to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  (Doc. 4.)  The Firm argues that Isakson has not alleged sufficient minimum contacts with the state of Montana to support the Court's exercise of personal jurisdiction over the Firm. For the reasons discussed below, the Firm's motion to dismiss is granted in part and denied in part.  Although this Court lacks personal jurisdiction, the interest of justice demands the case be transferred to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1406(a).

1

# BACKGROUND[1]

The Firm is a Texas law firm with four locations, all exclusively within the state of Texas. (Doc. 5-1 at ¶¶ 4–7.)  In 2018, the Firm hired Isakson, who at the time lived in Texas, as its business manager. (*Id.* ¶ 15.)  In 2019, Isakson became the Firm's Chief Executive Officer.[2] (Doc. 7-1 at ¶¶ 3–4.)  Isakson directly supervised four to six employees, two of whom were full-time permanent remote employees working from Colorado and Illinois. (*Id.* ¶ 19.)  In July 2020, Isakson began working remotely from Whitefish, Montana. (*Id.* ¶¶ 5–6.)  Several other Firm executives worked remotely, either full-time or part-time, from their homes in Colorado, Illinois, or Texas towns without a primary office location. (*Id.* ¶ 12.)

Isakson made the decision to move to Whitefish during the COVID-19 pandemic for personal reasons unrelated to the Firm's practice of law. (*See id.* ¶ 5; Doc. 10-1 at ¶¶ 11–12.)  The parties disagree as to whether the move was temporary or permanent.  Isakson claims that the Firm was aware his move was permanent, (*see* Doc. 7-1 at ¶ 7), while the Firm maintains it treated his remote

---

[1] Consistent with the standards applicable to a Rule 12(b)(2) motion, the following facts are taken from the Complaint, as well as from the affidavits and other relevant evidence submitted by the parties. *Caruth v. Int'l Psychoanalytical Ass'n,* 59 F.3d 126, 128 (9th Cir. 1995).  The Court need not and does not consider the additional facts presented in the Firm's supplemental brief. (*See* Doc. 23.)

[2] The Firm alleges this was a title Isakson bestowed upon himself, while Isakson claims he was appointed by the Firm's Board of Directors. (*Compare* Doc. 10-1 at ¶ 16 *with* Doc. 7-1 at ¶ 4.)

work from Montana as temporary because Isakson had assured the Firm he still owned a home in Houston, that he would be moving back to Houston, and that his wife's employer may also require her to return to Houston, (*see* Doc. 5-1 at ¶¶ 21–22; Doc. 10-1 at ¶¶ 11–12; Doc. 10-2 at ¶¶ 12–13). The Firm maintains that not only was Isakson's move to Montana neither required by or a benefit to the Firm, but it was not even "approved." (Doc. 10-1 at ¶ 20; Doc. 10-2 at ¶ 14.) However, as apparently required by the Internal Revenue Service ("IRS") guidelines pertaining to temporary work locations, in November 2021, the Firm updated Isakson's employment record to reflect a full-time remote status with his Montana address. (Doc. 7-1 at ¶ 8.) Also at that time, the Firm began deducting Montana payroll taxes, paying Montana unemployment taxes, and providing worker's compensation and employer's liability insurance for Isakson's home office in Montana. (*Id.*) In November 2022, Jeff Roberts, the Firm's vice president, terminated Isakson's employment during a phone call. (Doc. 1 at ¶ 19.) Roberts was in Texas during the call, while Isakson was in Montana. (Doc. 10-1 at ¶ 25; Doc. 7-1 at ¶ 36.)

In November 2023, Isakson sued the Firm, alleging that his termination violated Montana's Wrongful Discharge from Employment Act ("WDEA"). (Doc. 1.) The Firm moved to dismiss all claims for want of personal jurisdiction. (*See* Doc. 4.) A motion hearing was held on March 14, 2024. (*See* Docs. 11, 18.) At

3

the conclusion of the hearing, the parties were asked to be prepared to discuss a

potential transfer of venue and related conflict of law issues at the preliminary

pretrial conference the following day.  At the March 15 conference, Isakson argued

the case should stay in Montana because Montana has personal jurisdiction over

the Firm and, because the WDEA provides specific protections for the employee-

employer relationship, Montana has the stronger interest in the case.  The Firm

countered that Texas has the stronger interest because its laws protect employers,

like the Firm, by providing them the freedom and flexibility of an at-will system.

The Court ordered supplemental briefing on conflict of law and choice of law

issues raised at the conference.  (*See* Docs. 22–24.)[3]

## LEGAL STANDARDS

### I.  Personal Jurisdiction

#### A.  Federal Rule of Civil Procedure 12(b)(2)

Dismissal for lack of personal jurisdiction may be raised in a Rule 12(b)(2)

motion.  "Where a defendant moves to dismiss a complaint for lack of personal

jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is

---

[3] On April 5, 2024, Isakson filed a motion to strike portions of the Firm's
supplemental brief because it included new allegations regarding Isakson's
residency, voting status, and ownership and management of a Texas limited
liability company and exhibits, none of which were presented in the Firm's motion
to dismiss or discussed at oral argument.  (*See* Doc. 25.)  That motion was denied.
(Doc. 27.)

appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts."[4] *Id.* (internal quotation marks omitted). Although the plaintiff "cannot simply rest on the bare allegations of its complaint," uncontroverted allegations must be taken as true. *Id.* (internal quotation marks omitted). In other words, courts do not assume the truth of allegations in a pleading that are contradicted by affidavit. *LNS Enters. Ltd. Liab. Co. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022). However, in the case of dueling affidavits, "conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (internal quotation marks and alteration omitted).

## B.     Montana Rule of Civil Procedure 4(b)(1)

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). In Montana, courts apply a two-step test to determine whether they have personal jurisdiction over a

---

[4] When a court holds an evidentiary hearing, the plaintiff's burden increases, requiring proof by preponderance of the evidence. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). The March 14 hearing held here was merely for argument and no evidence was presented. Thus, the less onerous burden still applies.

nonresident defendant. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015). First, courts consider whether personal jurisdiction exists under Montana's long-arm statute, Rule 4(b)(1) of the Montana Rules of Civil Procedure. Rule 4(b)(1) subjects parties to general jurisdiction if they are "found within the state of Montana" and to specific jurisdiction "as to any claim for relief arising from the doing personally, or through an employee or agent, of any" of the following enumerated acts:

(A) the transaction of any business within Montana;

(B) the commission of any act resulting in accrual within Montana of a tort action;

(C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;

(D) contracting to insure any person, property, or risk located within Montana at the time of contracting;

(E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;

(F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana; or

(G) acting as personal representative of any estate within Montana.

Second, a court must consider whether the exercise of personal jurisdiction comports with due process. *Milky Whey*, 342 P.3d at 17. Due process "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021) (quoting

6

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).  "The defendant . . .
must take some act by which it purposefully avails itself of the privilege of
conducting activities within the forum State."  *Id.* at 359 (internal quotation marks
and alterations omitted).  "Accordingly, exercising specific personal jurisdiction
over a defendant is only appropriate when both the defendant and the underlying
controversy are appropriately affiliated with Montana."  *Ford Motor Co. v. Mont.
Eighth Judicial Dist. Court*, 443 P.3d 407, 412 (Mont. 2019).

## II.    Transfer of Venue

"The question of personal jurisdiction, which goes to the court's power to
exercise control over the parties, is typically decided in advance of venue, which is
primarily a matter of choosing a convenient forum."  *Leroy v. Great W. United
Corp.*, 443 U.S. 173, 180 (1979).  Generally, civil cases may be brought only in a
district: (1) where any defendant resides, if all defendants reside in the same state;
(2) where a substantial part of the events giving rise to the claim occurred; or (3)
where any defendant may be found, if there is no district in which the action may
otherwise be brought.  28 U.S.C. § 1391(b).  If an action is brought in the wrong
division or district, district courts have discretion under 28 U.S.C. § 1406(a) to
transfer the action to any district or division in which it could have been brought,
provided transfer is in the interest of justice.  *Jones v. GNC Franchising, Inc.*, 211
F.3d 495, 497 (9th Cir. 2000).

ANALYSIS

The parties do not dispute the Court lacks general personal jurisdiction over the Firm because it is a Texas corporation with its principal place of business in Texas.  The parties disagree as to whether the Firm had sufficient minimal contacts with Montana to support a finding of specific personal jurisdiction.  Isakson asserts such jurisdiction exists because the Firm "purposefully" employed him in Montana, paid Montana employment and unemployment taxes, had a Montana-based worker's compensation and employer's liability insurance policy, occasionally conducted business in Montana, and "engaged in conduct that resulted in the accrual of a tort action in the State of Montana, thereby injecting itself in multiple ways into the affairs of the State of Montana."  (Doc. 1 at ¶ 4.)  The Firm argues Isakson has not established sufficient contacts with Montana under Montana's long-arm statute or the Due Process Clause of the United States Constitution.

Because the Firm's only contacts with Montana were the result of Isakson's decision to move there, the Firm is correct that neither Montana's long-arm statute nor due process support a finding of personal jurisdiction.  Accordingly, the interest of justice supports a transfer to the United States District Court for the Southern District of Texas under 28 U.S.C. § 1406(a).

8

## I.     Personal Jurisdiction

### A.     Montana's Long-Arm Statute

Isakson insists that the requirements under Montana's long-arm are met under three separate subsections of Rule 4(b)(1), arguing that the Firm transacted business in Montana under subpart (A), committed an act resulting in a tort action under subpart (B), and contracted to insure a person, property, or risk located within Montana under subpart (D).[5]  These theories are discussed in turn; none establish personal jurisdiction over the Firm.

### 1.     Transacting Business in Montana

Isakson claims jurisdiction is established under subpart (A) because his claims arise from the Firm's "transaction of any business within Montana."  Mont. R. Civ. P. 4(b)(1)(A).  Neither side presents authority establishing a clear definition of "transaction of any business" in Montana.  Isakson cites the Montana Supreme Court's decision in *Prentice Lumber Co. v. Spahn*, 474 P.2d 141, 144–45 (Mont. 1970), for the proposition that there is a "prevailing trend" to interpret what constitutes conducting business broadly.  (Doc. 7 at 16–17.)  Under more recent precedent, however, the Montana Supreme Court explained the factors that show a

---

[5] Although Izakson's supplemental briefing touches on the contractual underpinnings of the WDEA, (*see* Doc. 24 at 10), no argument for personal jurisdiction has been made under Rule 4(b)(1)(E), *Schwarzenegger*, 374 F.3d at 800, and the issue is not addressed here.

defendant was transacting business within Montana are the same as the factors that would support a finding of general jurisdiction—albeit to a less exacting standard. *Milky Whey*, 342 P.3d at 18.  These factors include the defendant's "local negotiations for various types of commercial transactions, the solicitation of business within the state, prior litigations in the forum, the presence of agents in the state, and the existence of ongoing contractual relationships with residents of the forum state." *Id.* (quoting 4A Wright & Miller, § 1069.3 at 156–61).

Isakson argues that because he was employed in Montana, other employees of the Firm occasionally conducted business activities in Montana, and the Firm paid taxes and insured him in Montana under a worker's compensation and employer's liability policy, that the Firm was transacting business within the meaning of Montana's long-arm statute.  Isakson further relies on the fact that the Firm bought and still owns Isakson's computer and networking equipment and paid for his internet access.  Additionally, Isakson points out that he personally "transacted and solicited a great deal of corporate business" for the Firm from his home office in Montana.  (Doc. 7 at 13.)

The Firm counters that Isakson takes "significant liberties" with the facts in his affidavit.  (Doc. 10 at 2.)  First, the Firm argues its only business is practicing law, which it does exclusively in Texas, and the work that Isakson performed for the company—banking, payroll, hiring and managing employees, and paying

vendors—was incidental to support the Firm's practice of law, not the Firm's "business." (*Id.*)  Second, the Firm asserts that any employees Isakson claims "worked" while in Montana were on vacation.  Third, as discussed in more detail below, the Firm points out that IRS guidelines require employers to pay taxes and insure even temporary remote workers once they have been working in another state for more than one year, and following such requirements alone is not enough to confer personal jurisdiction.  In sum, the Firm maintains it did not transact business in Montana as to invoke jurisdiction because the Firm did not hire Isakson in Montana, it did not seek to expand its business into Montana, his remote work location was a unilateral and unapproved decision by Isakson, and his work itself only ancillary to the Firm's business.  The Firm is correct.

Unlike in *Prentice Lumber*, where the parties engaged in the interstate sale of lumber, 474 P.2d at 141, here, the Firm is not engaged in the practice of law in Montana; its legal practice is exclusively located in Texas.  The Firm has never employed a Montana-licensed attorney, practiced law in Montana, or planned to generate legal work in Montana. (Doc. 10-2 at ¶¶ 4–8.)  Nothing in Isakson's affidavit contradicts the Firm's statements that it has never solicited business within Montana, negotiated locally to further its business in Montana, or had any clients, financial accounts, or other contractual relationships with Montanans, other than those directly linked to Isakson's remote location in Montana.  (Doc. 10-1 at

11

¶¶ 5–10, 18, 19, 24; Doc. 10-2 at ¶¶ 4–9, 16–18.)  Although the parties dispute whether any of the Firm's other employees conducted business in Montana and the benefit of the doubt goes to Isakson, *LNS Enters.*, 22 F.4th at 858, employees checking email and Isakson's management team having work-related conversations at his home in Whitefish, (*see* Doc. 7-1 at ¶¶ 27–33), do not rise to the level of "transacting business."  Many modern companies have out-of-state meetings and/or corporate retreats, and employees often engage in important work-related conversations while traveling, for any number of reasons.  These incidental contacts are insufficient to show that the Firm transacted business in Montana for the purposes of specific personal jurisdiction under Rule 4(b)(1)(A).

### 2.    Accrual of a Tort in Montana

Isakson next argues that personal jurisdiction is proper under subpart (B), which extends jurisdiction over "the commission of any act resulting in accrual within Montana of a tort action."  Mont. R. Civ. P. 4(b)(1)(B).  The Firm argues that a WDEA claim cannot give rise to jurisdiction under subpart (B) because it is a statutory claim that preempts other torts related to wrongful discharge.  The Montana Supreme Court does not appear to have answered that question, but even assuming a WDEA action is a tort action under the meaning of the long-arm statute, jurisdiction would be improper.

The test for whether a tort accrued in Montana is "highly-fact specific and dependent on the nature of the alleged tort at issue." *Groo v. State Eleventh Judicial Dist. Court*, 537 P.3d 111, 119 (Mont. 2023) (holding that a tort accrued in Montana when a New York social media user directed a negative campaign at a Montana business and its customers). The inquiry "focuse[s] on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Tackett v. Duncan*, 334 P.3d 920, 928 (Mont. 2014). "[J]urisdiction is not acquired through interstate communications solely by signing a contract to be performed in another state." *Groo*, 537 P.3d at 118; *see also Cimmaron Corp. v. Smith*, 67 P.3d 258, 261 (Mont. 2003) ("[I]nterstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be considered a contact for justifying the exercise of personal jurisdiction." (Internal quotation marks omitted.)); *Threlked v. Colorado*, 16 P.3d 359, 364–65 (Mont. 2000) (finding no long-arm jurisdiction existed where the defendants' interstate communications related entirely to services to be performed out-of-state).

While no Montana case is on fours with this case, the Court's reasoning in *Bird v. Hiller*, 892 P.2d 931 (Mont. 1995), is persuasive. In *Bird*, the Montana Supreme Court held that Montana courts lacked personal jurisdiction over an Idaho attorney because, although the attorney had communicated with his clients in

13

Montana, the alleged torts of fraud and deceit had accrued in Idaho when the attorney agreed to represent the Montana residents for their claims arising out of an automobile accident that occurred in Idaho. *Id.* at 934.

Here, Isakson's claims center upon his allegedly wrongful termination, which Jeff Roberts, acting as an agent of the Firm from his office in Texas, performed over the phone. It is undisputed that the termination itself targeted Isakson in Montana and was experienced by Isakson in Montana. However, the acts giving rise to the termination—both the Firm's decision to terminate him and all of Isakson's own actions and efforts while working for the Texas-based Firm—either occurred in Texas or were directed toward operating a business solely in Texas. Isakson was hired by the Texas Firm while he was a resident of Texas, and even after his move to Montana, he worked to advance the Firm's legal business in Texas. Under Montana law, any alleged tort connected to Isakson's termination from his employment with the Firm accrued where the events that gave rise to his termination occurred—in Texas. Therefore, Rule 4(b)(1)(B) does not confer specific personal jurisdiction over the Firm.

### 3.   Contracting to Insure Any Person in Montana

Isakson's next argument is that jurisdiction is proper under subpart (D) because his wrongful discharge claims arose from the Firm "contracting to insure any person, property, or risk located within Montana at the time of contracting."

14

Mont. R. Civ. P. 4(b)(1)(D).  Specifically, Isakson argues that after he had been

working remotely from Montana for one year, the Firm secured a Montana

employer's liability and worker's compensation insurance policy for him at his

Montana address.  The Firm disagrees that subpart (D) applies here because

Isakson's wrongful termination claim is not connected to the policy, which covers

an employee's "bodily injury by accident or bodily injury by disease," (Doc. 7-2 at

35, 36), and expressly excludes "termination of any employee," (*id.* at 37).  The

Firm is again correct.

The parties agree that "arising from" in this context means a "direct

affiliation, nexus, or substantial connection between the basis for the cause of

action and the act which falls within the long-arm statute." *Seal v. Hart*, 50 P.3d

522, 527 (Mont. 2002).  At issue in *Seal* was whether a district court erred in

deciding the merits of an insurance claim during a jurisdictional dispute. *Id.*  The

plaintiff alleged breach of contract, arguing the defendant failed to fulfill her

"contractual duty to insure the goods [at issue] against loss or damage . . . and he

suffered a loss as a result of [that] breach." *Id.*  The Montana Supreme Court

determined that personal jurisdiction was appropriate under Rule 4(b)(1)(D)

because "[a]t their core, the allegations in the complaint derived from the alleged

act." *Id.*

Conversely, here, Isakson's claims stem entirely from his allegedly wrongful termination.  Unlike *Seal*, it is unnecessary to delve into the merits of Isakson's WDEA claims in the jurisdictional analysis.  For one, Isakson does not allege any breach of the worker's compensation or employer's liability policy.  (*See generally* Doc. 1.)  Furthermore, the insurance policy that he argues establishes the requisite nexus expressly excludes coverage for any damages arising from the "termination of any employee," (Doc. 7-2 at 37), the precise act at issue in this case.  The policy applied only if Isakson was injured on the job while working remotely in Montana.  Thus, the policy does not create a "direct affiliation, nexus, or substantial connection" between the basis for Isakson's cause of action under the WDEA and the Firm's termination of his employment.  *Seal*, 50 P.3d at 527.  The mere fact that the policy covered Isakson and his remote work location in limited ways during his employment is insufficient to create a substantial connection to his wrongful discharge claim.  Therefore, Rule 4(b)(1)(D) cannot be used to establish personal jurisdiction over the Firm.

### B.    Due Process

As Isakson has failed to establish specific personal jurisdiction under Montana's long-arm statute, the Firm's motion to dismiss could be granted for that reason alone.  *See Milky Whey*, 342 P.3d at 21.  However, even if Isakson had satisfied one of the conditions identified above, the exercise of personal

16

jurisdiction over the Firm must also comport with due process. *Ford Motor Co.*,

592 U.S. at 358.  The Firm argues it neither availed itself of the benefits of

Montana's laws, nor did it purposely direct any activity toward Montana.  The

Firm maintains that "Isakson was hired in Texas, lived in Texas, and worked in

Texas until he unilaterally 'moved' to Montana temporarily due to COVID-19."

(Doc. 10 at 11.)  Isakson counters that the Firm both purposefully availed itself of

the benefits and protections of the laws of Montana and purposefully directed

activity toward Montana when it terminated Isakson here because the termination

was a voluntary act designed to have an effect in Montana.  The Firm once again

has the better argument.

Montana applies federal constitutional law to determine whether the exercise

of personal jurisdiction comports with the "traditional notions of fair play and

substantial justice embodied in the due process clause." *B.T. Metal Works & Daryl*

*Boyd, D.B.A. v. United Die & Mfg. Co.*, 100 P.3d 127, 133–34 (Mont. 2004)

(adopting the three-part test employed by the Ninth Circuit); *see King v. Am. Fam.*

*Mut. Ins. Co.*, 632 F.3d 570, 578–79 (9th Cir. 2011) (recognizing that Montana

"permits the exercise of personal jurisdiction over nonresident defendants to the

maximum extent permitted by federal due process" (alteration omitted)).  Due

process generally requires a defendant "have certain minimum contacts" with the

forum state, *Int'l Shoe*, 326 U.S. at 316, ensuring that "a defendant be haled into

court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State, *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Put simply, a defendant must have "reached out beyond its home." *Ford Motor Co.*, 592 U.S. at 359 (internal quotation marks omitted).  Examples of this include "exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (internal quotation marks and alteration omitted)).  "[A] tort must involve the forum state itself[] and not just have some effect on a party who resides there." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017).

In considering the constitutionality of a court's exercise of personal jurisdiction, the Ninth Circuit employs the following three-prong test, for which an insufficient showing at any prong requires dismissal:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (internal quotation marks omitted).  "The plaintiff bears the burden of establishing the first two prongs of the test[,]" and if

18

successful, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476–78).

While purposeful availment and direction are often confused, the correct test for a case sounding in tort is purposeful direction. *Id.* Purposeful direction usually involves evidence that the defendant directed its action toward the forum, "such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803. Purposeful direction "requires that the defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 805 (internal quotation marks omitted). Here, the first prong is clear: the Firm called Isakson to terminate him. The third prong is equally clear: the Firm reasonably knew that Isakson would have suffered the effects of his termination in Montana, where he resided. Thus, the second prong is dispositive: whether the Firm expressly aimed its actions toward Montana.

Taking Isakson's factual allegations as true, the Firm withheld Montana taxes related to his employment, obtained a worker's compensation and employer's liability insurance policy for him, and engaged in interstate communication with him related to his job. (Doc. 7-1 at ¶¶ 7–8, 10, 12.) This distinguishes Isakson's case from instances where the defendant's relationship with the forum state was

19

predominately to impact the market of the forum state. *Cf. Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988) (holding that a Swiss clinic's tortious conduct was partly intended to avail it of California's market). But the fact that the Firm never attempted to avail itself of Montana's market for legal services weighs against finding it "expressly aimed" any actions at Montana. Every connection between Montana and the Firm—including Isakson's occasional hosting of Firm employees—was the result of Isakson's unilateral decision to move there, and all are the sort of "random, fortuitous, or attenuated contacts" that under *Burger King*, 471 U.S. at 475 (internal quotation marks omitted), are insufficient to establish specific personal jurisdiction. Although he lives in Montana, Isakson's "injury is entirely personal to him and would follow him wherever he might choose to live or travel"; thus, "the effects of [the Firm's] actions are . . . 'not connected to the forum State in a way that makes those effects a proper basis for jurisdiction.'" *Picot*, 780 F.3d at 1215 (quoting *Walden*, 571 U.S. at 290).

Because Isakson has neither established a prima facie showing of specific personal jurisdiction over the Firm under Montana's long-arm statute nor one that comports with due process, the Court lacks personal jurisdiction over the Firm.

20

### C.    Jurisdictional Discovery

In his response to the Firm's motion to dismiss, Isakson requests that, rather than granting the Firm's motion, he be allowed to conduct jurisdictional discovery so that he may further develop the necessary jurisdictional evidence. The Firm argues that because Isakson's temporary remote work location was its only tie to Montana, jurisdictional discovery is not necessary.

"A district court is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)). Discovery is useful when "jurisdictional facts are contested or more facts are needed." *Id.*

But the mere existence of a dispute is not itself enough to justify jurisdictional discovery. To justify discovery, plaintiffs must first make a preliminary showing of jurisdiction, requiring the plaintiff provide a "colorable basis" for personal jurisdiction, which is a lower burden than the prima facie showing required to survive a motion to dismiss. *See Chapman v. Krutonog*, 256

21

F.R.D. 645, 649 (D. Haw. 2009) (collecting cases).  Next, the plaintiff "must specify what facts they expect to uncover during discovery and how those facts would support personal jurisdiction." *First Nat'l Bank v. Estate of Carlson*, 448 F. Supp. 3d 1091, 1108 (D. Mont. 2020) (quoting *Chapman*, 256 F.R.D. at 648). "[A] mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) (internal quotation marks omitted).

Here, Isakson alleges that he conducted business on the Firm's behalf in Montana, where his home functioned as a satellite office for the Firm.  Taken as true, this at least provides a colorable basis for personal jurisdiction.  But Isakson's response to the Firm's motion to dismiss lacks any specificity about what he would hope to learn through discovery.  Isakson fails to identify any potentially discoverable facts that may change the analysis above, instead asking only to "have a meaningful opportunity to develop evidence related to the jurisdictional issue." (Doc. 7 at 34.)  Merely pointing to the existence of a jurisdictional dispute and arguing that discovery may uncover further evidence is insufficient to justify jurisdictional discovery.  Isakson has failed to show that jurisdictional discovery would uncover any specific facts that would change the analysis regarding the Firm's Rule 12(b)(2) motion.

## II.    Transfer of Venue

Although the Court lacks personal jurisdiction over the Firm, transfer, rather than dismissal, is appropriate.  *See* 28 U.S.C. § 1406(a).  A transfer would not cause hardship to the Firm and the Firm's position on the merits would not be prejudiced.  However, a transfer would allow Isakson to obtain personal jurisdiction over the Firm while also alleviating the procedural burdens related to the cost of refiling a lawsuit in Texas federal court and any statute of limitations concerns that might apply to Isakson's potential cause(s) of action(s) in Texas.  Additionally, a transfer under § 1406(a) does not prejudice any choice of law analysis to be determined by the transferee court.

### CONCLUSION

Accordingly, IT IS ORDERED that the Firm's motion to dismiss (Doc. 4) is DENIED in PART and GRANTED in PART.  Although the request to dismiss the case is DENIED, the case is TRANSFERRED to the United States District Court for the Southern District of Texas.  28 U.S.C. § 1406(a).  The Clerk is directed to transmit the case file.

DATED this ___9th___ day of April, 2024.

14:48 P.M.

Donald W. Molloy, District Judge
United States District Court

23